UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS SANFORD JR.

      Plaintiff,                   Case No:

                                   Hon.

-vs-                               Mag.

LANSING COMMUNITY COLLEGE,
and LORI WILLETT and CHRIS MACKERSIE,
Jointly and Severally

  Defendant.

_____/
TIM P. SEEGER (P83315)
Attorney for Plaintiff
801 Broadway, NW, Ste. 302
Grand Rapids, MI  49504
P: (616) 259-8463
F: (517) 393-3000
E: tseeger@4grewal.com
_____/

## I.    COMPLAINT AND JURY DEMAND

**NOW COMES**, Plaintiff, Curtis Sanford, by and through his attorneys Tim P. Seeger and Grewal Law PLLC, and states as follows:

## II.    JURISDICTION AND PARTIES

1. This is an action stating a federal cause of action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 USC 2000e et seq., discrimination pursuant to the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq., and retaliation pursuant to 42 U.S.C. §1983.

1

2.  Plaintiff, Curtis Sanford, is an individual who is, and at all times relevant herein was, a resident of the County of Kalamazoo, State of Michigan.

3.  Defendant Lansing Community College ("LCC" or "Defendant") is a Michigan community college with its principal place of business in Lansing, Michigan in the County of Ingham

4.  That at all times pertinent hereto, Defendant, Lori Willett ("Ms. Willett"), was the Director of Labor Relations and Organizational Development at LCC and was at all times herein acting in her capacity as an employee of LCC.

5.  That at all times pertinent hereto, Defendant, Chris MacKersie ("Mr. MacKersie"), was the Administrative Services Executive Director at LCC and was at all times herein acting in his capacity as an employee of LCC.

6.  This Honorable Court has "federal question" jurisdiction pursuant to 28 USC §1331 for the reason that the Plaintiff's Complaint states claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 USC §2000e et. seq., and 42 USC 1983.

7.  This Court has jurisdiction over State pending claims also known as the Elliot-Larsen Civil Rights Act, Act 453 of 1976.

8.  This Honorable Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 USC §1367, and Plaintiff's federal law claims substantially predominate over Plaintiff's state law claims.

9.  Venue is proper in this judicial district pursuant to 28 USC §1391 for the reason that the unlawful acts alleged occurred within this judicial district.

10. Plaintiff timely filed his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), attached as Exhibit A.

11. Plaintiff received his Right-to-Sue Letter from the EEOC, dated October 12, 2021, attached as Exhibit B.

12. Plaintiff filed this Complaint within 90-days of receiving his Right-to-Sue Letter from the EEOC.

### III.   FACTS

13. Plaintiff began his employment with Defendant in LCC's Infrastructure Police Department on or about February 10, 2020.

14. Mr. Sanford's job duties included, but were not limited to, general police duties, patrolling LCC's campus, responding to allegations of wrongdoing, and protecting LCC students, faculty, and visitors.

15. At all relevant times, Plaintiff performed his job duties and responsibilities in a manner that, at a minimum, demonstrated that he was qualified to retain his position and regularly received positive performance evaluations from his employer.

16. In or around April of 2021, Mr. Sanford began to experience concerning, racist, and inappropriate remarks from Ofc. Marymargaret Bradbury ("Ofc. Bradbury"), a Caucasian coworker, and fellow police officer,

17. These comments were made while Ofc. Bradbury was both on and off duty, while present at the LLC police station.

18. Ofc. Bradbury's comments included her stating that Derek Chauvin, the Minnesota police officer who was lawfully convicted of murdering George Floyd while on duty, was innocent and justified in his actions.

19. Ofc. Bradbury made these comments on multiple days and occasions and made it a point to bring up the George Floyd matter when in the presence of Mr. Sanford.

–3–

20. On April 19, 2021, Ofc. Bradbury further elaborated that she would have done the same thing as Mr. Chauvin, meaning she would have placed Mr. Floyd in a "neck restraint" or "chokehold," the direct cause of Mr. Floyd's unjustified death.

21. Ofc. Bradbury made these comments, concerning killing an unarmed black male, directly to her black peer, Mr. Sanford.

22. On multiple occasions, Mr. Sanford explained to Ofc. Bradbury that her racist remarks were offensive and made him uncomfortable.

23. In response, Ofc. Bradbury doubled down on her discriminatory conduct stating Mr. Sanford is unable to comment because he is a black man, and he is biased.

24. On April 21, 2021, Mr. Sanford made multiple complaints to his superiors about the comments and how he felt uncomfortable working with Ofc. Bradbury.

25. Mr. Sanford spoke with Sgt. Timothy Davis, then acting sergeant of the LCC police and command on-duty; Ms. Kristy Derosia, Head of Dispatch; and Ofc. Lisa Rosseau, Ofc. Bradbury's training officer.

26. On April 22, 2021, Ofc. Rosseau scheduled a meeting with Ofc. Bradbury to discuss her Daily Observation Report.

27. During this meeting. Ofc. Rosseau advised Ofc. Bradbury that there had been some complaints about her behavior with coworkers, including her making racist remarks.

28. Pursuant to Ofc. Rosseau's account of the conversation, she did not disclose to Ofc. Bradbury that Mr. Sanford made the complaints.

29. Upon hearing of these complaints, Ofc. Bradbury immediately stated that she "knew" Mr. Sanford was the person who had filed a complaint.

–4–

30. Ofc. Bradbury then divulged that she and Mr. Sanford had a sexual relationship that ended prior to her being hired at LCC, and further stated that she was scared of Mr. Sanford and fearful for her safety.

31. Based upon information and belief, Ofc. Bradbury had never disclosed, nor claimed, to any LCC official that she had safety concerns regarding Mr. Sanford in the time she had been employed by LCC.

32. Based upon information and belief, Ofc. Bradbury only raised this complaint in response to learning that Mr. Sanford complained about her racist remarks.

33. Ofc. Rosseau then advised Ofc. Bradbury to seek a personal protective order against Mr. Sanford.

34. On April 22, 2021, following Ofc. Rosseau's meeting with Ofc. Bradbury, Ofc. Rosseau composed an email to Sgt. Davis regarding the situation.

35. Despite acknowledging the complaints from Mr. Sanford, Ofc. Rosseau instead focused her e-mail on Ofc. Bradbury's allegations.

36. Relying solely on Ofc. Bradbury's unsupported allegations, Ofc. Rosseau wrote that Mr. Sanford had been displaying "very serious sociopathic behaviors," that he was intentionally manipulating his supervisors in an attempt to get revenge on Ofc. Bradbury, and that he was a "recipe for deadly workplace violence."

37. The email went on to recommend that Mr. Sanford be immediately removed from duty and that Ofc. Bradbury seek a personal protection order (PPO) against him.

38. Ofc. Rosseau's email then mentions her own fears and that she is convinced, after having a single meeting with Ofc. Bradbury, that Mr. Sanford was a "ticking time bomb" that needed to be dealt with immediately.

39. These comments made by Ofc. Rosseau were in contrast to the numerous and friendly text messages between Ofc. Rousseau and Mr. Sanford, including messages from April 21, 2021.

40. Ofc. Rousseau made no recommendation as to Ofc. Bradbury in contemplation of the racist remarks made.

### APRIL 22, 2021 MEETING

41. On April 22, 2021, Mr. Sanford was ordered to attend a meeting with Lori Willet, the head of LCC's Human Resources Department, following his 12-hour shift.

42. Mr. Sanford was under the impression that this meeting would be centered around the complaints he filed regarding Ofc. Bradbury's racist comments.

43. Ms. Willet acknowledged Mr. Sanford's complaints at the outset of the meeting; however, Mr. Sanford's complaints were not addressed during this meeting.

44. Ms. Willett was largely focused on Mr. Sanford's prior relationship with Ofc. Bradbury.

45. Ms. Willett began asking Mr. Sanford regarding his sexual history with Ofc. Bradbury.

46. Mr. Sanford was taken aback by these questions as he believed the meeting was called to discuss Ofc. Bradbury's racist comments and his safety concerns.

47. Mr. Sanford answered the questions asked by Ms. Willet honestly.

48. Ms. Willett never disclosed to Mr. Sanford that he was under investigation.

49. Ofc. Chad Beckett, a Caucasian male and Mr. Sanford's internal union representative, also attended this meeting via Zoom.

50. Unbeknownst to the participants, Mr. Beckett audio recorded the entire meeting.

51. Such a recording, without the knowledge of the participants, is a violation of LCC rules and regulations.

52. Based on information and belief, Ofc. Beckett was not reprimanded for the improper audio recording nor his failure to disclose the recording after LCC learned of the recording.

## MR. SANFORD'S UNPAID SUSPENSION/TENTATIVE TERMINATION

53. On May 5, 2021, Mr. Sanford was served with a Personal Protection Order filed by Ofc. Bradbury.

54. On the same date, Mr. Sanford received a phone call from his union representative simply instructing Mr. Sanford to not come into work. No other information was provided.

55. Mr. Sanford was not notified why he was being suspended at that time.

56. On May 11, 2021, Mr. Sanford received the first correspondence regarding the decision to place him on unpaid leave.

57. The May 11, 2021 correspondence stated that Mr. Sanford was "tentatively terminated" and, following an investigation from LCC, a final decision would be made on whether he should be permanently terminated or reinstated with disciplinary action.

58. The correspondence failed to state why Mr. Sanford was suspended and/or "tentatively terminated."

59. On May 13, 2021, Mr. Sanford received a second correspondence from Chris MacKersie alleging that Mr. Sanford was dishonest during his HR interview and actively tried to lie or mislead the investigation about his prior relationship with Ofc. Bradbury.

60. The letter further states that Mr. Sanford violated a direct order to not communicate with other LCC employees regarding this investigation when Mr. Sanford spoke with his

–7–

direct supervisor, and acting department Chief, Lt. Rod Bahl, about the initial HR interview.

61. To note, Lt. Bahl was invited to the April 22, 2021 HR interview, but was unable to attend due to a scheduling conflict.

62. Lt. Rod Bahl approached Mr. Sanford after the meeting and requested information from Mr. Sanford about the meeting.

63. Mr. Sanford did not believe he was violating any order as he was answering questions from his commanding officer who was supposed to be present at, and was aware of, the April 22, 2021 meeting.

64. Furthermore, the agreement between the Board of Trustees of Lansing Community College and Capitol City Labor Program states in Article VII that all grievances should be discussed with direct supervisors in an attempt to resolve the matter informally.

65. Mr. MacKersie's letter briefly mentions that LCC was required to place him on leave following the service of the PPO obtained by Ofc. Bradbury, but spends the remainder of the letter focusing on what he described as "dishonesty" and a "breach of trust."

66. Mr. MacKersie's correspondence fails to make any mention of the racist comments made by Ofc. Bradbury, Mr. Sanford's complaints, or any related investigation.

## MR. SANFORD'S WRONGFUL TERMINATION

67. On May 11, 2021, Mr. Sanford filed a Grievance asserting that his unpaid administrative leave was an adverse employment action without written explanation or due process.

68. Mr. Sanford's Grievance was subsequently denied on May 20, 2021.

69. LCC alleged that Mr. Sanford was properly placed on leave after being served a PPO and that he had been properly notified and represented through the entire investigation.

70. To note, the Ingham County Circuit Court subsequently terminated Ofc. Bradbury's PPO against Mr. Sanford, as she failed to support her allegations and the court did not find that reasonable cause existed to continue the PPO.

71. Importantly, the Court denied the PPO without even hearing argument from Mr. Sanford, or his counsel, holding that Ofc. Bradbury simply did not meet her burden.

72. Mr. Sanford was formally terminated by LCC on May 28, 2021.

73. To date, no investigation or action was ever taken regarding Mr. Sanford's initial complaints that Ofc. Bradbury was making racist remarks at the workplace.

74. This is admitted by Lori Willet, who stated in a letter dated June 17, 2021, that the College had no record of any complaint being made by Mr. Sanford, despite Ofc. Lisa Rousseau emailing Sgt. Timothy Davis of these very complaints on April 22, 2021, and Ms. Willet's acknowledgment at the April 22, 2021 meeting.

## COUNT I – VIOLATION OF TITLE VII – RACE DISCRIMINATION
### (As to Defendant Lansing Community College)

75. Plaintiff repeats and realleges each and every paragraph of this Complaint as though fully set forth herein verbatim.

76. At all times relevant herein, Plaintiff was an "employee" and Defendant was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 USC §2000e, as amended by the Civil Rights Act of 1991 ("Title VII").

77. Plaintiff is a member of a protected class based upon his race as an African-American.

78. Defendant had a duty under Title VII not to discharge or otherwise discriminate against Plaintiff in his employment on the basis of race.

79. Defendant violated Title VII by discriminating against Plaintiff because of his race in the following respects:

    a.  Suspending Plaintiff from employment due to his race;

    b.  Terminating Plaintiff's employment because of his race;

    c.  Denying Plaintiff employment opportunities because of his race;

    d.  Treating employees, including Plaintiff, differently than similarly situated non-African American employees;

    e.  Otherwise discriminating against and disparately treating Plaintiff on the basis of his race with respect to the terms, conditions and privileges of his employment, as stated herein.

80. As a direct and proximate result of Defendant's discriminatory and illegal acts, which acts were based on unlawful considerations of Plaintiff's race, Plaintiff suffered damages, including but not limited to: (1) the loss of employment, (2) loss of past and future employment income and employee benefits, (3) personal injuries including but are not limited to mental, emotional and psychological distress, anxiety, humiliation, embarrassment, derogation, pain and suffering, and physical ailments, (4) a sense of outrage and injury to his feelings, and (5) injury to his professional reputation.

      WHEREFORE, Plaintiff respectfully requests that this Court enter its Judgment against Defendant, in favor of Plaintiff, in whatever amount is shown to be established by the proofs in this cause, awarding Plaintiff all economic damages, back pay, front pay, compensatory damages, non-economic damages, exemplary damages, punitive damages, attorney fees and costs, and pre- and post-judgment interest, as well as such other and further legal or equitable relief as this Court deems appropriate, available under the law.

## COUNT III –RETALIATION – TITLE VII (42 U.S.C. § 2000e-3)
### (As to Defendant Lansing Community College)

81.  Plaintiff repeats and re-alleges each and every paragraph of this Complaint as though fully set forth herein.

82. At all times relevant herein, Plaintiff was an "employee" and Defendant was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 USC §2000e, as amended by the Civil Rights Act of 1991 ("Title VII").

83. Plaintiff is a member of a protected class based upon his race as an African-American.

84. Plaintiff's employment was adversely effected in the following manner

    f.   Suspending Plaintiff from employment due to his race;

    g.   Terminating Plaintiff's employment because of his race;

    h.   Denying Plaintiff employment opportunities because of his race;

    i.   Treating employees, including Plaintiff, differently than similarly situated non-African American employees;

    j.   Otherwise discriminating against and disparately treating Plaintiff on the basis of his race with respect to the terms, conditions and privileges of his employment, as stated herein.

85. Plaintiff was subjected to the adverse employment actions described herein due to the following protected activity:

    a.   Lodging complaints regarding racist comments made by Ofc. Bradbury;

    b.   Reporting concerning discriminatory conduct and racist remarks made by Ofc. Bradbury;

    c. Participating in an investigation related to his rights as an employee subject to Title VII and the Michigan Elliott-Larsen Civil Rights Act.

    d. Opposing his suspension and tentative termination.

    e. Seeking to have his rights enforced and lodging complaints about discriminatory conduct.

    f. Having complained about Defendant's discriminatory employment practices to the U.S. Equal Employment Opportunity Commission above, in violation of Title VII and the Michigan Elliott-Larsen Civil Rights Act.

86. Plaintiff would not have been subjected to the adverse employment actions described herein but for his race and his protected activity described in this complaint.

87. As a direct and proximate result of Defendant(s)' actions of retaliation, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress; he has incurred and will continue to incur medical expenses for treatment by health professionals and for other incidental expenses; and he has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

    WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a Judgment against Defendant(s) in whatever amount is shown to be established by the proofs in this cause, together with all economic damages, exemplary damages, compensatory damages, punitive damages, pre- and post-judgment interest, costs, and reasonable attorneys' fees, as well as, such other and further legal or equitable relief as this Court deems appropriate, available under the law.

## COUNT III –VIOLATION OF
## THE  ELLIOTT-LARSEN CIVIL RIGHTS ACT – RACE DISCRIMINATION
### (As to Defendant Lansing Community College)

88. Plaintiff repeats and re-alleges each and every paragraph of this Complaint as though fully set forth herein.

89. At all times relevant herein, Plaintiff was an employee and Defendant was an "employer" within the meaning of Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101, *et seq*., as amended.

90. Plaintiff is a member of a protected class based upon his race as an African-American.

91. At all times relevant herein, under the ELCRA, Plaintiff had a right to employment free from discrimination based on his race.

92. Defendant violated Plaintiff's rights under the ELCRA by acts, including but not limited to:

    a.   Suspending Plaintiff from employment due to his race;

    b.   Terminating Plaintiff's employment because of his race;

    c.   Denying Plaintiff employment opportunities because of his race;

    d.   Treating employees, including Plaintiff, differently than similarly situated non-African American employees;

    e.   Otherwise discriminating against and disparately treating Plaintiff on the basis of his race with respect to the terms, conditions and privileges of his employment, as stated herein.

93. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered damages, including but not limited to, loss of past and future income and employment

benefits, outrage, humiliation, embarrassment, mental anxiety, emotional distress, pain and suffering, and loss of professional reputation.

WHEREFORE, Plaintiff respectfully requests that this Court enter its Judgment against Defendant, in favor of Plaintiff, in whatever amount is shown to be established by the proofs in this cause, awarding Plaintiff all economic damages, back pay, front pay, compensatory damages, non-economic damages, exemplary damages, attorney fees and costs, and pre- and post-judgment interest, as well as such other and further legal or equitable relief as this Court deems appropriate, available under the law.

## COUNT IV- 42 U.S.C. §1983 VIOLATIONS
### (As to All Defendants)

94. Plaintiff repeats and re-alleges each and every paragraph of this Complaint as though fully set forth herein.

95. Defendant(s) at all times relevant hereto had actual and constructive knowledge of the conduct described above.

96. Defendant(s) retaliated against Plaintiff for lodging complaints regarding racist comments made by Ofc. Bradbury.

97. Plaintiff made these complaints based upon his good faith belief that the comments were a violation of Title VII and the Elliot Larsen Civil Rights Act.

98. Defendant(s) retaliated against Plaintiff for reporting concerning discriminatory conduct and racist remarks made by Ofc. Bradbury.

99. Defendant(s) retaliated against Plaintiff for participating in an investigation related to his rights as an employee subject to Title VII and the Michigan Elliott-Larsen Civil Rights Act.

–14–

100.     Defendant(s) retaliated against Plaintiff for opposing his suspension and tentative termination.

101.     Defendant(s) retaliated against Plaintiff for seeking to have his rights enforced and lodging complaints about discriminatory conduct.

102.     Defendant(s) retaliated against Plaintiff for having complained about Defendant's discriminatory employment practices to the U.S. Equal Employment Opportunity Commission above, in violation of Title VII and the Michigan Elliott-Larsen Civil Rights Act.

103.     Defendant(s)' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

104.     Defendant(s) failed to take all reasonable steps to prevent the retaliation from occurring.

105.     Defendant(s) failed to adequately supervise, control, or discipline and/or otherwise penalize the conduct, and acts.

106.     Ms. Willet and Mr. MacKersie were Plaintiff's supervisors, and/or had supervisory powers over Plaintiff, and were involved in, and/or made, the adverse employment actions described herein.

107.     As a direct and proximate result of Defendant(s)' actions of retaliation, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress; he has incurred and will continue to incur medical expenses for treatment by health professionals and for other incidental expenses; and he has suffered and will continue to suffer a loss of earnings and other employment benefits

and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a Judgment against Defendant(s) in whatever amount is shown to be established by the proofs in this cause, together with all economic damages, exemplary damages, compensatory damages, punitive damages, pre- and post-judgment interest, costs, and reasonable attorneys' fees, as well as, such other and further legal or equitable relief as this Court deems appropriate, available under the law.

## DEMAND FOR TRIAL BY JURY IS HEREBY MADE

Dated: January 6, 2021

Grewal Law, PLLC

By: _/s/ Tim P. Seeger_
TIM P. SEEGER (P83315)
Attorney for Plaintiff
801 Broadway, NW, Ste. 302
Grand Rapids, MI 49504
(616) 259-8463
tseeger@4grewal.com

–16–

## DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, CURTIS SANFORD, through and by his attorney, Tim P. Seeger, and

hereby makes a demand for a trial by jury in the above entitled matter.


Dated:  January 6, 2021                                Grewal Law, PLLC


                                                       By:  /s/ Tim P. Seeger
                                                       TIM P. SEEGER (P83315)
                                                       Attorney for Plaintiff
                                                       801 Broadway, NW, Ste. 302
                                                       Grand Rapids, MI  49504
                                                       (616) 259-8463
                                                       tseeger@4grewal.com